1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DONALD BULPITT,

11                  Petitioner,                No. CIV S-06-0566 MCE GGH P

12          vs.

13   KATHY MENDOZA-POWERS, et al.,

14                  Respondent.               FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Petitioner is a state prisoner proceeding through counsel with a petition for writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  In 1983 petitioner plead guilty to second degree

19   murder and was sentenced to 15 years to life.  In the instant action, petitioner challenges the 2004

20   decision by the California Board of Prison Terms (BPT) finding him unsuitable for parole.  This

21   was petitioner's sixth suitability hearing.  Petition, p. 11.  After carefully reviewing the record,

22   the court recommends that the petition be granted as to petitioner's claim that the BPT's decision

23   finding him unsuitable was not supported by some evidence.

24   II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

25          The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

26   petition for habeas corpus which was filed after the AEDPA became effective.  Neelley v. Nagle,

1   138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

2   AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

3   standards of review to be used by a federal habeas court in assessing a state court's adjudication

4   of a criminal defendant's claims of constitutional error.  <u>Moore v. Calderon</u>, 108 F.3d 261, 263

5   (9th Cir. 1997).

6   In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

7   Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

8   for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

9   between "contrary to" clearly established law as enunciated by the Supreme Court, and an

10  "unreasonable application of" that law.  <u>Id</u>. at 1519.  "Contrary to" clearly established law applies

11  to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

12  Court on a point of law, or (2) if the state court case is materially indistinguishable from a

13  Supreme Court case, i.e., on point factually, yet the legal result is opposite.

14  "Unreasonable application" of established law, on the other hand, applies

15  mixed questions of law and fact, that is, the application of law to fact where there are no factually

16  on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

17  <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

18  AEDPA standard of review which directs deference to be paid to state court decisions.  While the

19  deference is not blindly automatic, "the most important point is that an *unreasonable* application

20  of federal law is different from an incorrect application of law....[A] federal habeas court may not

21  issue the writ simply because that court concludes in its independent judgment that the relevant

22  state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

23  that application must also be unreasonable."  <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at

24  1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

25  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

26  authority.  <u>Woodford v. Viscotti</u>, 537 U.S. 19, 123 S. Ct. 357 (2002).

2

1    The state courts need not have cited to federal authority, or even have indicated

2  awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

3  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

4  contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

5  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

6  occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

7  established Supreme Court authority reviewed must be a pronouncement on constitutional

8  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

9  binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

10    However, where the state courts have not addressed the constitutional issue in

11  dispute in any reasoned opinion, the federal court will independently review the record in

12  adjudication of that issue.  "Independent review of the record is not de novo review of the

13  constitutional issue, but rather, the only method by which we can determine whether a silent state

14  court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

15  2003).

16    On March 22, 2005, the Los Angeles County Superior Court issued a reasoned

17  decision denying petitioner's habeas corpus petition which raised the claims raised in the instant

18  petition.  Respondent's Answer, Exhibit 4.  On April 28, 2005, the California Court of Appeal

19  denied petitioner's habeas petition by order citing In re Rosenkrantz, 29 Cal.4th 616, 647 (2002)

20  and In re Dannenberg, 34 Cal.4th 1061 (2005).  Respondent's Answer, Exhibit 5.  On July 20,

21  2006, the California Supreme Court summarily denied petitioner's habeas petition.

22  Respondent's Answer, Exhibit 6.

23    When reviewing a state court's summary denial of a claim, the court "looks

24  through" the summary disposition to the last reasoned decision.  Shackleford v. Hubbard, 234

25  F.3d 1072, 1079 n. 2 (9th Cir. 2000).  Accordingly, this court considers whether the Superior

26  Court's denial of petitioner's habeas petition was an unreasonable application of clearly

3

1   established Supreme Court authority.

2   III.  Background

3               The factual background of petitioner's offense is relevant to the analysis of

4   petitioner's claims.  At the time of the offense, petitioner was a medical doctor.  The BPT relied

5   on the factual summary of the offense contained in the probation report:

> [D]efendant and the victim, Charles Snodgrass, had been friends since childhood. "In the Spring of 1979 Mr. Snodgrass was arrested on a narcotics charge and agreed to become an informant for the California Bureau of Narcotic Enforcement.  At this time Snodgrass began pressuring defendant Bulpitt for money he had invested in a medical clinic.  He threatened to inform on defendant Bulpitt regarding his drug dealings which would impact on Bulpitt's medical license.
>
> "In the early summer of 1979 defendant Bulpitt was introduced to Jayson Hunter and Frank Morales.  He thereafter purchased cocaine from them and provided them with guns and money.  Hunter and Morales agreed to [kill] victim Snodgrass for $15,000.  Defendant Bulpitt agreed to this arrangement.
>
> "On September 11, 1979, a meeting with defendant Bulpitt and victim Snodgrass and his attorney was scheduled for 8 p.m. in downtown Pasadena.  Defendant Bulpitt did not attend the meeting, having called to cancel it.  Victim Snodgrass and the attorney left the office at 9 p.m. to walk to Snodgrass' car.  Upon arriving at the car, victim Snodgrass was ambushed and executed.  The murder weapon was a .38 caliber revolver owned by the defendant.
>
> As the court is aware, information supplied by the Attorney General indicates that defendant had formulated a story involving car trouble in order to cover himself.  Information further indicates that defendant had lied to police about the car trouble when questioned the day after the murder.

19  Respondent's Answer, Exhibit 3.

20  IV.  Discussion

21              The petition raises four claims.  In claim one, petitioner alleges that the BPT

22  violated Cal. Penal Code § 3041 in implementing California's parole system, in violation of

23  petitioner's liberty interest.  In claim two, petitioner argues that the BPT violated his plea bargain

24  by finding unsuitable for parole by characterizing his murder as "execution style."  Petitioner

25  argues that under California law, only first degree murders can be committed "execution style,"

26  and petitioner was convicted of second degree murder.  In claim three, petitioner argues that the

4

1   BPT's 2004 decision finding him unsuitable was not supported by sufficient evidence.  In claim

2   four, petitioner argues that the BPT's repeated denial of parole violated his right to due process.

3        Claims 2 and 4 are really further arguments in support of petitioner's claim that

4   the 2004 decision by the BPT was not supported by some evidence.  Accordingly, these

5   arguments will be addressed below in the section of these findings and recommendations

6   addressing petitioner's "some evidence" claim.

7        A.  Jurisdiction

8        Respondent first argues that the court lacks subject matter jurisdiction to consider

9   the petition because petitioner has no liberty interest in being released on parole.  Respondent

10  confuses the subject matter jurisdiction of the court with failure to state a cognizable claim.

11  Clearly, the court has subject matter jurisdiction over petitioner's habeas corpus claim pursuant

12  to 28 U.S.C. § 2254.  Federal question jurisdiction exists if the complaint (or petition) purports to

13  state a claim under federal law regardless of the validity of the claim.  Wheeldin v. Wheeler, 373

14  U.S. 647, 83 S. Ct. 1441, 1444 (1963).  Only if the stated federal claim is so wholly insubstantial

15  that even a preliminary review of the merits is not required does the federal court not have

16  jurisdiction.  Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773 (1946).  It is not every arguably failed

17  claim that deprives the district court of jurisdiction.  Here, petitioner properly invoked § 2254 for

18  the basis of his habeas claim.  His contentions that he was denied due process in the parole

19  setting process are not so insubstantial so as to deprive the court of jurisdiction.

20       Respondent next argues that California law does not give rise to a federally

21  protected liberty interest in parole release.  The Ninth Circuit rejected this argument.  Sass v.

22  California Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006).

23       B.  Sufficiency of the Evidence

24       In the parole context, the requirements of due process are met if "some evidence"

25  supports the decision."  Id. at 1128-1129.  In reviewing the BPT decision, the court analyzes

26  whether the factors relied on by the BPT, set forth in the relevant regulations, are supported by

5

1   some evidence.

2           Cal. Code of Regulations, section 2402(a) provides that regardless of the length of

3   time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of

4   the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

5           Cal. Code of Regulations, section 2402(c), sets forth the circumstances tending to

6   show unsuitability.  The court lists those of significance here:

7               (1) Commitment Offense.  The prisoner committed the offense in
                an especially heinous, atrocious or cruel manner.  The factors to be
8               considered include:

9               (A) Multiple victims were attacked, injured or killed in the same or separate
                incidents.
10
                (B) The offense was carried out in a dispassionate and calculated
11              manner, such as an execution-style manner.

12              *****

13              (D) The offense was carried out in a manner which demonstrates an
                exceptionally callous disregard for human suffering.
14
                (E) The motive for the crime is inexplicable or very trivial in
15              relation to the offense.

16              (2) Previous Record of Violence. The prisoner on previous
                occasions inflicted or attempted to inflict serious injury on a
17              victim, particularly if the prisoner demonstrated serious assaultive
                behavior at an early age.
18
                (3) Unstable Social History.  The prisoner has a history of unstable
19              or tumultuous relationships with others.

20              *****

21              *****

22              (6) Institutional Behavior.  The prisoner has engaged in serious misconduct in
                prison or jail.
23
                Section 2402(d) sets forth the circumstances tending to indicate suitability:
24
                (1) No Juvenile Record.  The prisoner does not have a record of
25              assaulting others as a juvenile or committing crimes with a
                potential of personal harm to the victims.
26

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for the Crime.  The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome . . .

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

In Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003) the Ninth Circuit indicated that a continued reliance on an unchanging factor such as the circumstances of the offense could result in a due process violation.  Biggs was serving a sentence of twenty-five years to life following a 1985 first degree murder conviction.  In the case before the Ninth Circuit, Biggs challenged the 1999 decision by the BPT finding him unsuitable for parole despite his record as a model prisoner.  334 F.3d at 913.  While the Ninth Circuit rejected several of the reasons given by the BPT for finding Biggs unsuitable, it upheld three:  1) petitioner's commitment offense involved the murder of a witness; 2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; 3) petitioner could benefit from therapy.  334 F.3d at 913.

The Ninth Circuit cautioned the BPT regarding its continued reliance on the gravity of the offense and petitioner's conduct prior to the offense:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest.

334 F.3d at 916.[1]

The BPT found petitioner unsuitable for parole for the following reasons: 1) the offense was carried out in an exceptionally violent and brutal manner, such as an execution style murder (§ 2402(c)(1)(B)); 2) the offense was carried out in a manner which demonstrated an exceptionally callous disregard for human life (§ 2402(c)(1)(D)); 3) petitioner had an unstable social history (§ 2402(c)(3)). Respondent's Answer, Exhibit 2, pp. 41-42.

All three of the factors relied on by the BPT in finding petitioner unsuitable involved unchanging factors, i.e. the circumstances of the offense and petitioner's unstable social

---

[1] Of course, what <u>Biggs</u> was struggling with was the apparent arbitrariness in revisiting the parole suitability decision using the very same factors which were considered when a petitioner was involved in the criminal process. That is, in ultimately determining the sentence a murder defendant should receive, at the inception of the process, the district attorney exercises some discretion, utilizing factors such as the manner in which the crime was committed, motive, previous criminal history and the like, in reaching a charging decision within the parameters of the law. If a case is bargained out of the process with a determination that based on law and circumstances an indeterminate term of incarceration with the possibility of parole is the appropriate sentence, again, the very same factors set forth in the parole suitability regulations are the factors obviously considered at plea bargaining time – again within the parameters of the law. If the case goes through trial and then to sentencing, the factors will be considered yet again at sentencing time. A sentence is then imposed with the settled expectation that the possibility of parole is not a sham, but that a meaningful possibility of parole exists. And, the possibility, if meaningful, has to be based upon future conduct as the past cannot be undone, and was considered already. The California parole regulations have the potential, nonetheless, to allow for reinstitution of the sentencing process such that if a commissioner or a governor does not like the fact that a certain defendant was sentenced to a possibility of parole, the established possibility of parole evaporates simply because of a latter day redetermination that the crime was egregious, or the motive was trivial etc.– something that was obviously apparent at the time the possibility of parole sentence was issued. Thus, we have cases, like the present one, where the parole suitability parole is denied numerous times based on a determination that the seriousness of the crime, or a related factor, precludes the possibility of parole. While it is perfectly fine to have a system where no possibility of parole exists for any murder, it is not perfectly fine to have a parole system that is based on misrepresentation.

1    history prior to his conviction.  As to petitioner's unstable social history, the BPT noted that

2    petitioner had been addicted to prescription drugs and cocaine, and had financial problems

3    causing him to commit his offense.  Respondent's Answer, Exhibit B, pp. 41-42.

4            Petitioner argues that there was not some evidence to support the BPT's finding of

5    unsuitability because the unchanging factors relied on by the BPT no longer demonstrated that he

6    posed an unreasonable risk of danger if released on parole.  Pursuant to Biggs, supra, the reliance

7    on these factors alone violated petitioner's right to due process if these factors no longer had

8    predictive value in determining whether petitioner was suitable for parole.  The court will

9    evaluate petitioner's record following his incarceration to determine whether these unchanging

10   factors had any predictive value.

11           The BPT acknowledged that petitioner had no prior criminal record.

12   Respondent's Answer, Exhibit B, p. 41.  This circumstance tended to indicate his suitability for

13   parole.  Cal. Code Regs. tit. 15, § 2402(2) (previous record of violence tends to show

14   unsuitability); § 2402(d)(1) (no juvenile record tends to show suitability).

15           The BPT specifically found that petitioner had realistic parole plans.

16   Respondent's Answer, Exhibit B, 41; Cal. Code of Regs. § 2402(d)(8) (realistic parole plans

17   tends to show suitability).  In particular, petitioner had a letter in his file from Prospect Medical

18   Holdings stating that it would employ him as a medical records examiner and reviewer following

19   his release from prison.  Id., p. 19.  Petitioner also planned on living with Paula Osten.  Id., p. 17.

20           The BPT found that petitioner required no additional educational or vocational

21   training before being released.  Cal. Code of Regs. § 2402(d)(9) (institutional behavior indicates

22   enhanced ability to function within the law upon release).  Petitioner was a medical doctor prior

23   to his conviction and while incarcerated had participated in the New England Journal of

24   Medicine's Continued Education Program by mail since his incarceration.  Respondent's

25   Answer, Exhibit B, p. 20.  The BPT noted that petitioner's advanced degree and continuing

26   education activities "obviously negates the need to further himself educationally."  Id., p. 21.

1          The BPT read into the record portions of the psychological report prepared by Dr.

2    Silverstein for the 2004 hearing indicating that petitioner posed a lower than average risk for

3    dangerousness if released from prison:

4             [H]is advanced age, his lack of severe mental disorder, his noted character logical
              improvements, and his substantial support in the community would all bode well

5             for him in predicting a lower than average risk for dangerousness if released from
              prison.  His potential for relapse into substance abuse would be ongoing risk

6             factor he would need to address via participation in relapse prevention programs;
              AA, support programs, and random testing for drugs and alcohol.  Under these

7             conditions, the potential for dangerousness in the community compared to the
              average citizen would likely be no higher than average.

8

9    Id., pp. 24-25.

10         Dr. Silverstein's report concluded that petitioner would be a better than average

11   candidate for parole and would present a lower than average risk for violence of criminal

12   recidivism.  Id., pp. 25-26.  Cal. Code of Regs. § 2402(d)(9) (institutional behavior indicates

13   enhanced ability to function within the law upon release).

14         The BPT acknowledged that while in prison, petitioner participated in NA and

15   AA.  Id., p. 26.  He had also participated in six years of psychotherapy.  Id., p. 31.  In addition, he

16   had received only one rules violation report during his entire incarceration, and that was in 1990.

17   Id., p. 28.  Cal. Code of Regs. § 2402(d)(9).

18         At the 2004 hearing, petitioner expressed sincere regret for his crime, which

19   tended to show his suitability for parole.  Section 2402 (d)(3) (signs of remorse tends to show

20   suitability).

21            I'm very sorry that I–that my friend was harmed and killed.  I would never get
              myself involved in such a thing again.  I don't know.  If I could, I would certainly

22            take his place.  You know I would (indiscernible) be here today rather than me.
              Not in prison, but just alive.  And I don't know how to say anything more other

23            than the fact that I'm sincerely sorry.  I accept responsibility for it. I know that
              doesn't change him being dead and me being–sitting here in front of you, but.

24

25   Respondent's Answer, Exhibit 2, p. 29.

26   /////

1    At the time of the 2004 hearing, petitioner was 59 years old.  Answer, Exhibit 5c.

2  Petitioner's age reduced the probability of his recidivism.  See Section 2402(d)(7).

3    Considering that the 2004 hearing was petitioner's sixth suitability hearing, he had

4  been incarcerated for 21 years and had an exemplary prison record, the court finds that the pre-

5  commitment factors relied on by the BPT to find petitioner unsuitable no longer had any

6  predictive value in determining whether he would be a risk if released.  Therefore, the BPT's

7  reliance on these unchanging factors violated petitioner's right to due process.

8    Substitute the word "callous" for "trivial," and the following quote epitomizes the

9  reason why reliance on unchanging circumstances, in a system whose statutory structure requires

10  the *meaningful* possibility of parole, is unreasonable in an AEDPA, common sense, or any

11  context:

12    More important to the undersigned in assessing any due process
     violation is the fact that continuous reliance on unchanging
13    circumstances transforms an offense for which California law
     provides eligibility for parole into a de facto life imprisonment
14    without the possibility of parole. The court asks rhetorically–what
     is it about the circumstances of petitioner's crime or motivation
15    which are going to change? The answer is nothing. The
     circumstances of the crimes will always be what they were, and
16    petitioner's motive for committing them will always be trivial.
     Petitioner has no hope for ever obtaining parole except perhaps that
17    a panel in the future will arbitrarily hold that the circumstances
     were not that serious or the motive was more than trivial. Given
18    that no one seriously contends lack of seriousness or lack of
     triviality at the present time, the potential for parole in this case is
19    remote to the point of non-existence. Petitioner's liberty interest
     should not be determined by such an arbitrary, remote  possibility.

20

21  Irons v. Warden of California State Prison–Solano, 358 F. Supp. 2d  936, 947 (E.D. Cal. 2005).

22    Petitioner also argues that there was not sufficient evidence to support the

23  unchanging factors on which the BPT relied to find petitioner unsuitable.  The court need not

24  reach this argument because even if sufficient evidence supported the BPT's findings regarding

25  these factors, continued reliance on these factors violated petitioner's right to due process for the

26  reasons discussed above.  The court does, however, make the following observations.

As discussed above, petitioner argues that by finding that he committed his murder execution style, the BPT improperly characterized his murder as first rather than second degree.  California law indicates that it is not improper to find a petitioner convicted of second degree murder unsuitable for parole where the circumstances of his crime suggest first rather than second degree murder:

> Therefore, an unsuitability determination must be predicated "on some evidence that the particular circumstances of [the prisoner's] crime–circumstances beyond the minimum elements of his conviction–indicated exceptional callousness and cruelty with trivial provocation, and thus suggested he remains a danger to public safety."  (In re Dannenberg, supra, 34 Cal.4th at p. 1098, 23 Cal.Rptr.3d 417, 104 P.3d 783.)  For example, premeditation was considered in Rosenkrantz because, though the prisoner had been convicted only of second degree murder, the evidence showed "'a full week of careful preparation, rehearsal and execution," and that the prisoner, who "fired 10 shots at close range from an assault weapon and fired at least three or four shots into the victim's head as he lay on the pavement," carried out the crime with "planning, sophistication or professionalism."  (Rosenkrantz, at p. 678, 128 Cal.Rptr.2d 104, 59 P.3d 174.)

In re Scott, 133 Cal.App.4th 573, 597-598, 34 Cal.Rptr.3d 905, 921 (2005).

California courts have similarly found that "to demonstrate 'an exceptionally callous disregard for human suffering' (§ 2402, subd. (c)(1)(D)), the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of second degree murder."  In re Scott, 119 Cal.App.4th 871, 891, 15 Cal.Rptr.3d 32, 45 (2004).

This court need not consider whether the circumstances of petitioner's crime were more dispassionate and calculated or demonstrated a greater callousness than that ordinarily shown in the commission of second degree murder.  As discussed above, even assuming the facts of petitioner's crime involved circumstances that went beyond the minimum elements of his conviction, the BPT's continued reliance on these unchanging circumstances to find petitioner unsuitable violated petitioner's right to due process.

Petitioner also argues that the BPT's finding that he lacked a stable social history was not supported by some evidence.  The BPT found that petitioner's drug use and financial

1   instability caused him to have an unstable social history.  Dr. Silverstein's 2004 psychological

2   report discusses petitioner's drug use and financial problems.  Respondent's Answer, Exhibit 5c.

3   The report states that petitioner began abusing various drugs while working long hours as a

4   physician.  Id.  Petitioner began abusing various prescription drugs as well as using cocaine

5   during off-hours and would sometimes stay up all night using cocaine.  Id.  Petitioner also began

6   selling drugs.  Id.  Regarding his financial problems the report states,

7   > The inmate and the victim were apparently engaged in drug dealing out of a
> medical clinic they owned.  The inmate apparently owed money to the victim and
8   > was pressuring him to pay him back, in doing so he threatened to report the
> inmate to the medical board and authorities which would cause him to loose his
9   > license and likely to go prison.  The inmate reported that he felt trapped by the
> situation and contracted with associates of a patient of his to have the victim
10  > murdered.

11  Id.

12          While the record is clear that petitioner had a problem with drugs, the record does

13  not indicate that this contributed to a history of unstable or tumultuous relationships.  In re

14  DeLuna, 126 Cal.App.4th 585, 494-595, 24 Cal.Rptr. 643, 650 (2005).  The same can be said of

15  petitioner's financial problems.  Because there was no evidence petitioner's drug use and

16  financial problems caused him to have tumultuous or unstable social relationships, the court

17  would find that this finding by the BPT was not supported by some evidence.  However, even

18  assuming this unchanging factor was supported by some evidence, the court would find that it no

19  longer had predictive value in determining petitioner's parole suitability for the reasons discussed

20  above.

21          Petitioner also argues that the BPT failed to consider that petitioner's motive for

22  the crime, i.e. he committed his crime as a result of a significant stress in his life, tended to show

23  he was suitable for parole.  Section 2402(d)(4) (suitability indicated if prisoner committed crime

24  as a result of significant stress built over a long period of time).  Petitioner argues that his

25  financial problems created significant stress which caused him to commit the murder.  The court

26  need not consider this factor because the record indicates that the factors on which the BPT relied

13

1  to find petitioner unsuitable were not supported by some evidence.[2]

2  In denying petitioner's habeas petition the Superior Court stated as follows:

3  The Court has read and considered Petitioner's Writ of Habeas Corpus filed on
   December 17, 2004.  Having independently reviewed the record, giving deference
4  to the broad discretion of the Board of Prison Terms ("Board") in parole matters,
   the Court concludes that the record contains "some evidence" to support the
5  Board's finding that petitioner is unsuitable for parole.  (In re Rosenkrantz (2002)
   29 Cal.4th 616, 667; see Cal.Code Regs. tit. 15, § 2402.)

6

7  The Board found petitioner unsuitable because the commitment offense was
   exceptionally violent and brutal in that it was carried out in a calculated,
8  execution-style manner.  (Cal. Code of Regs., tit. 15, § 2402(c)(1)(B).)  The Board
   also found Petitioner had a prior unstable social history.  (Cal. Code Regs. tit. 15,
   § 2402(c)(3)).

9

10  The record reflects Petitioner and the victim had been friends for a number of
    years and were in business together operating a medical clinic. [Footnote1]
11  Petitioner was a medical doctor.  At some point, both Petitioner and the victim

12       [Footnote1: Petitioner elected not to discuss the commitment offense. The
         Board took the facts from the probation report.]

13  became involved in the use and sale of narcotics.  The victim began to pressure
    Petitioner for money he had invested in the medical clinic and threatened to
14  provide information regarding Petitioner's drug dealings. [Footnote 2]

15       [Footnote 2: The victim had at some point been arrested and agreed to
         become an informant for the California Bureau of Narcotic Enforcement.]

16

17  In the summer of 1979, Petitioner met with two individuals from whom he
    purchased drugs.  He offered them fifteen thousand dollars to kill the victim.
18  They agreed and he provided them with guns and money. Thereafter, in
    September 1979, Petitioner scheduled a meeting with the victim and his attorney
19  to take place in downtown Pasadena.  On the day of the meeting while the victim
    and his attorney walked to the victim's car, the victim was "ambushed and
    executed" with a gun owned by Petitioner. [Footnote 3]

20

21

22       [2]  While the record contains evidence indicating that petitioner's financial problems
    contributed to his decision to kill his friend, the record also contains evidence suggesting that
23  petitioner's drug abuse also contributed to this decision.  The 1999 psychological evaluation of
    petitioner by Dr. Sheldon states that petitioner's diagnosis of polysubstance dependence was
24  directly related to his criminal offense.  Respondent's Answer, Exhibit 5c.  Dr. Sheldon's report
    states, "The drugs were a significant factor in setting the stage for his violent act.  As a result of
25  this diminished capacity to control his action and incomprehension of the consequences of his
    actions.  It appears drug addition warped his mind and thinking."  Id.  The degree to which
26  petitioner's drug addiction motivated him to commit the crime undermines petitioner's argument
    that the stress he suffered as a result of financial problems motivated his crime.

> [Footnote 3: Petitioner never showed up to the meeting but called to cancel.  He apparently told the police he concocted a story about having car trouble.  It is unclear from the record which of the two individuals or both, actually shot the victim.]

The record also reflects Petitioner began using prescription drugs to sleep or stop pain he felt from a variety of medical conditions.[Footnote 4] Then he began using cocaine to counteract

> [Footnote 4: It is unclear from where the Board extracted this information . However, the probation report includes a statement made by Petitioner that he "had been using cocaine as a result of my relationship with Paula and Chuck, but my use was insubstantial.  However, by the time of the money problem I was experience [sic] in the summer of 1979 I had come to use many prescription drugs..."]

the prescription drugs.  As well, he began selling drugs because he was having financial difficulties.

Based upon the record the Court finds there is "some evidence" to support the Board's conclusion that Petitioner is unsuitable because the commitment offense was dispassionate and calculated (Cal. Code Regs., tit. 15, § 2402(c)(1)(B)) and that Petitioner had a prior history of unstable or tumultuous relationships with others (Cal. Code Regs., tit. 15, § 2402(c)(3)).  Even if the Board's determination that petitioner is unsuitable was based only upon the circumstances of the commitment offense, the circumstances of the crime are more than the minimum necessary to sustain a conviction for second-degree murder.  (Rosenkrantz, supra, at 683).  The court in Rosenkrantz specifically held that the Governor was not precluded from considering evidence of premeditation and deliberation even though a jury did not find evidence of such beyond a reasonable doubt.  (Id. at 679.)  It therefore follows that where, as here, Petitioner was charged with first-degree murder but plead to second-degree, the Board in exercising its discretion can consider evidence that Petitioner predicated and deliberately committed this murder.

The Court's conclusion is only further reinforced by the California Supreme Court's recent decision in In re Dannenberg (2005) 34 Cal.4th 1061.  The court made it clear that the Board's primary concern in determining parole suitability is the safety of the community.  Here the record reflects the Board considered Petitioner's post conviction gains but still concluded Petitioner would pose an unreasonable threat to public safety.  (Penal Code § 3041(b).)  Under Dannenberg Petitioner should expect to serve his maximum sentence of life in prison unless and until the Board acts to fix a shorter term.  (Dannenberg at 109701098.)

Accordingly, the petition is denied.

Respondent's Answer, Exhibit 5c.

The Superior Court opinion states that the BPT considered petitioner's post conviction gains but still concluded that petitioner would pose an unreasonable risk to public

1   safety.  As discussed above, petitioner's post conviction gains combined with his lengthy

2   incarceration clearly indicated that he no longer posed an unreasonable risk to public safety.

3   Biggs, supra.  Because the denial of this claim by the Superior Court was an unreasonable

4   application of the facts to the due process law surrounding parole suitability hearings, the petition

5   should be granted as to this claim.

6                       B.  Cal. Penal Code § 3041

7              Petitioner argues that Cal. Penal Code § 3041 requires the BPT to give him a

8   parole date.  Section 3041 provides that one year prior to the inmate's minimum eligible parole

9   release date a panel consisting of at least two commissioners of the BPT shall meet with the

10  inmate and *shall normally* set a parole release date.  Petitioner appears to argue that because §

11  3041 provides that the BPT shall normally set parole release dates, the BPT violated due process

12  by failing to set his parole release date.

13             As discussed above, California's parole scheme gives rise to a cognizable liberty

14  interest in release on parole.  Sass v. California Bd. of Prison Terms, 461 F.3d 1123 (9th Cir.

15  2006).  "In the parole context, the requirements of due process are met if 'some evidence'

16  supports the decision."  Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003).  If there is not some

17  evidence to support a decision denying parole, due process is violated.  Therefore, even though

18  California law states that the BPT shall normally set parole release dates, due process does not

19  require the BPT to state a date where some evidence exists demonstrating that petitioner should

20  not be paroled.  Accordingly, petitioner's claim that the BPT was required to set his parole

21  release date pursuant to Cal. Penal Code § 3041 is without merit.

22             Because the denial of this claim by the Superior Court was not an unreasonable

23  application of clearly established Supreme Court authority, this claim should be denied.

24             The denial of this claim by the California Supreme Court was not an unreasonable

25  application of clearly established Supreme Court authority.  Accordingly, this claim should be

26  denied.

1   Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

2 a writ of habeas corpus be granted as to his claim that the BPT's decision finding him unsuitable

3 for parole was not supported by some evidence.

4   These findings and recommendations are submitted to the United States District

5 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

6 days after being served with these findings and recommendations, any party may file written

7 objections with the court and serve a copy on all parties.  Such a document should be captioned

8 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

9 shall be served and filed within ten days after service of the objections.  The parties are advised

10 that failure to file objections within the specified time may waive the right to appeal the District

11 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12 DATED: 12/26/06

13   /s/ Gregory G. Hollows

14   GREGORY G. HOLLOWS
   UNITED STATES MAGISTRATE JUDGE

15

16 bul566.157

17

18

19

20

21

22

23

24

25

26

17